First National Bank of West Point, appellant, v.
Kate Crawford, appellee.

Filed April 4, 1907. No. 14,764.

1. **Appeal: Verdicts.** The act of 1903 (laws 1903, ch. 125), section 681a
   of the code, relative to the mode of review in this court of judg-
   ments in suits of equity, does not disturb the conclusiveness of
   decisions of fact by juries, or by trial judges sitting in their stead,
   in law cases.

2. **Evidence** examined, and found to uphold the judgment of the dis-
   trict court.

Appeal from the district court for Cuming county:
Guy T. Graves, Judge. *Affirmed.*

*E. K. Valentine* and *M. McLaughlin,* for appellant.

*Anderson & Keefe,* contra.

Ames, C.

In 1889, J. C. Crawford borrowed upon his note from
one Lyon the sum of $3,000, and assigned to the payee, as
collateral security, 30 shares of capital stock, belonging to
him, of the plaintiff bank. The note, after its maturity,
was indorsed and delivered, together with the collateral,
to the bank for collection. Crawford was unable to pay,
and no satisfactory disposition could then be made of
the collateral, and it was so arranged that the defendant
and appellee herein, Kate Crawford the wife of the debtor,
became surety on her husband's note for $1,500, and half
the collateral was assigned to her for her protection. The
amount of the new note was renewed in the sum of $1,200,
and repeated renewals of the latter have been made until
shortly before the beginning of this action upon this last
of them. In January, 1902, the Crawfords borrowed from
the Nebraska State Bank, another institution, the sum of
$1,500, with which they paid off and discharged the un-
paid residue of the Lyon note. At that time the plaintiff
delivered to them the certificate of the bank shares, which

seems up to that time to have remained in its possession, and they deposited it with the State bank as collateral security for their indebtedness to the latter. Mrs. Crawford, however, did not relinquish, but subordinated, her interest in the collateral for the security of the latter mentioned bank. This last mentioned note was also renewed from time to time until January, 1903, when Hunker and Wilde loaned to J. C. Crawford upon his note, secured by the bank shares as collateral, the sum of $1,500, with which amount the obligation to the State bank was paid off, and the certificate returned to the plaintiff. Hunker and Wilde were directors of the plaintiff bank, and this last loan was made by them out of its funds. Subsequently the plaintiff converted all the bank shares, which counsel on both sides treat, as by common consent, as having been at all times worth at least their par or face value, to its own use, and applied a sufficient amount thereof to the payment of the Hunker and Wilde note, and the residue toward the satisfaction of an undescribed general indebtedness by J. C. Crawford to itself. There is no question about the existence of this indebtedness, or that it was other than and additional to the note signed by the appellee as surety.

Thus far there is no dispute about the facts, except that the plaintiff denies any arrangement or agreement between itself and Mrs. Crawford by which she was awarded any part of the shares of bank stock as security for her signature to her husband's note, and denies any knowledge of any arrangement between her and the Nebraska State bank by which she was to retain a lien upon the shares in subordination to the lien of the latter. But a young lady, now deceased, a daughter of the Crawfords, who transacted all the business in their behalf, testified unequivocally to both arrangements, and she is fully corroborated as to the former of them by Mr. Anderson, her counsel, who was present when the negotiations were in progress for obtaining the signature of the wife, and we think she is corroborated also by the fact that at the

time the loan was made from the State bank, with the proceeds of which the Lyon note was paid off, the plaintiff delivered the certificate to the Crawfords unconditionally. What took place between the latter and the State bank at the time the latter made its loan was testified to by the young lady, and is undisputed and rather probable than otherwise. We think that her version of both transactions is established by a preponderance of the evidence, although it is, as to the first of them, contradicted by the testimony of the president of the plaintiff bank who conducted the affair on its behalf.

There is a sharp conflict with reference to one other matter of fact. The president testified that at the time that the $1,500 loan was made through Hunker and Wilde, and used to pay off the State bank note, he had a conversation with the daughter, who represented her parents in the business, and she agreed that the stock certificate should be returned to the bank, and that the proceeds of the shares when they should be disposed of should be used first for the payment of the Hunker and Wilde note, and that the residue should be appropriated toward the payment of her father's general indebtedness to the plaintiff, and he says that he did not know that Mrs. Crawford had or claimed, or had ever done so, that she had a lien on any of the shares for her own security. We are persuaded, however, that he had known it, though the fact may have slipped from his memory, and the daughter testified that the conversation she had and the agreement she made with him, as she understood the matter, was that the plaintiff might retain and apply toward her father's general indebtedness so much as the 150 shares were worth, or as should be realized from them, in excess of their par or face amount; that amount to be used to satisfy the note of her mother for $1,200, and one given by herself, upon the same consideration, for the sum of $300. Her interpretation of the circumstances seems to us to be rather the more reasonable of the two, because it is hardly to be presumed that she would have, voluntarily

and without consideration, given away or released her mother's indemnity. Two other persons, officers of the bank, were present and heard the conversation, or a part of it, and understood it in the same sense as the president, but they did not know of the existence of the $1,200 note or learn of it until afterwards, so that it is easy to understand how they may have fallen into a misapprehension. The most that can be said on behalf of the bank is that the evidence upon this point was very evenly balanced, and the trial judge, who heard the oral testimony, decided the issue against it. A jury was waived, and the cause was tried to the court, who entered a finding and judgment for the defendant from which the plaintiff appealed. We do not understand that the act of 1903 (laws 1903, ch. 125), section 681a of the code, relative to the mode of review in this court of judgments in suits in equity, disturbs the conclusiveness of decisions of fact by juries, or by trial judges sitting in their stead, in law cases.

The court permitted the filing of an amended answer, setting up new matter in defense, after the trial had begun, but the cause was thereupon continued, and the plaintiff was afforded an opportunity to meet the new matter by pleading and evidence, so that the proceeding was somewhat analogous to that of allowing the withdrawal of a juror and permitting an amendment afterwards, and appears not to have wrought the plaintiff any prejudice.

We conclude that the judgment is supported by the evidence, and recommend that it be affirmed.

OLDHAM and EPPERSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.